NO. 07-98-0205-CR


 07-98-0206-CR

 07-98-0207-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MAY 21, 2002



______________________________



MARY HELEN GRANADOS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



 _________________________________



FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH COUNTY;



NO. 2353, 2354 AND 2355; HONORABLE DAVID M. MCCOY, JUDGE



_______________________________



Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

 Appellant Mary Helen Granados appeals from three judgments adjudicating her guilt
and sentencing her to various terms of confinement. We affirm. BACKGROUND

 In May, 1997, a Collingsworth County grand jury issued three indictments against
appellant. Indictment in Cause No. 2353 was for burglary of a habitation on or about April
28, 1997. Indictment in Cause No. 2354 was for burglary of a habitation on or about April
2, 1997. Indictment in Cause No. 2355 was for forgery occurring on or about March 27,
1997. (1) 

 On June 16, 1997, pursuant to plea bargains, appellant pled guilty in each cause. 
The trial court found that the evidence substantiated appellant's guilt in each cause. 
Pursuant to written agreements between appellant and the State, the trial court deferred
adjudication of guilt. In Cause No. 2355, adjudication was deferred for two years. In
Cause Nos. 2353 and 2354, adjudication was deferred for 10 years. The agreed
recommendation was that each period of deferred adjudication was to be served
concurrently, and not consecutively, which was what the trial court ordered. 

 As a term of probation the trial court required appellant to serve 60 days in the
Collingsworth County Jail. The jail time as a probation condition was in accordance with
the recommendation of the State pursuant to oral agreement between the State and
appellant which was placed of record and agreed to by appellant and her attorney during
the deferred adjudication hearing. The jail time condition was not typewritten in the
judgments, but was interlined by hand. The judgments do not have a date noted for the
interlineation, nor initials or other indication of who interlined the jail time condition of
probation. 

 The State subsequently filed motions to adjudicate in each cause. The trial court
adjudicated appellant guilty in each cause on February 24, 1998, and on that date imposed
sentences. In Cause No. 2355, appellant was sentenced to incarceration for two years. 
In Cause No. 2353, she was sentenced to confinement for 16 years. In Cause No. 2354,
she was sentenced to confinement for 16 years. On March 26, 1997, the trial court signed
judgments nunc pro tunc in Cause Nos. 2353 and 2354 because the original judgments
reflected sentences of confinement for 15 years. 

 Appellant timely filed motions for new trial and general notices of appeal in each
cause. On August 25, 1998, she filed amended notices of appeal. The amended notices
state that the appeals are for jurisdictional defects and that the trial court granted
permission to appeal. 

 Appellant urges, via four issues, that the judgment in each cause should be
reversed because her due process of law rights were violated. First, she asserts that the
judgments entered following the deferred adjudication hearings are fundamentally
defective and therefore void because they contain handwritten notations. Her second and
third issues claim the trial court erred in imposing sentences exceeding the plea bargain
agreements. Her fourth issue claims error by the trial court in assessing terms of
confinement exceeding the agreed periods for deferred adjudication, without giving
appellant an opportunity to withdraw her plea agreements.

JURISDICTION

 We first consider whether we have jurisdiction to consider the merits of the appeals. 
See State v. Roberts, 940 S.W.2d 655, 657 (Tex.Crim.App. 1996). Courts address the
question of jurisdiction sua sponte; for, unless a court has jurisdiction over a matter, its
actions in the matter are without validity. Id. at 657 n.2. If the jurisdiction of a court of
appeals is not properly invoked, the power of the appellate court to act is as absent as if
it did not exist, id., and the appeal will be dismissed for lack of jurisdiction. See State v.
Riewe, 13 S.W.3d 408, 413-14 (Tex.Crim.App. 2000). 

 Appellate jurisdiction is invoked by giving timely and proper notice of appeal. See
id. at 410. An untimely notice of appeal or a notice of appeal which does not conform to
jurisdictional requirements or contain jurisdictional assertions will not invoke the jurisdiction
of the court of appeals. See White v. State, 61 S.W.3d 424, 428-29 (Tex.Crim.App. 2001);
Riewe, 13 S.W.3d at 411.

 To perfect appeal from a judgment which was rendered on the defendant's plea of
guilty or nolo contendere under Code of Criminal Procedure article 1.15, and in which the
punishment assessed did not exceed the punishment recommended by the prosecutor and
agreed to by the defendant, the notice of appeal must (a) specify that the appeal is for a
jurisdictional defect; (b) specify that the substance of the appeal was raised by written
motion and ruled on before trial; or (c) state that the trial court granted permission to
appeal. See Tex. R. App. P. 25.2(b)(3) (2); White, 61 S.W.3d at 428. The requirements of
TRAP 25.2(b)(3) apply to a defendant who plea bargains for deferred adjudication, to the
extent the appeal is based on terms of the plea bargain. See Vidaurri v. State, 49 S.W.3d
880, 883-85 (Tex.Crim.App. 2001). When the appeal concerns whether the sentence upon
revocation and adjudication is in accordance with the prosecutor's recommendation
pursuant to the plea bargain, the requirements of TRAP 25.2(b)(3) apply. Id. at 884-85;
see Watson v. State, 924 S.W.2d 711, 714 (Tex.Crim.App. 1996). In the absence of some
express agreement between the prosecutor and the defendant limiting the punishment to
be assessed in the event of a subsequent adjudication of defendant, when the prosecutor
recommends deferred adjudication in exchange for a defendant's plea of guilty or nolo
contendere and deferred adjudication is granted, then the trial judge does not exceed the
recommendation if, upon proceeding to an adjudication of guilt, the judge later assesses
any punishment within the range allowed by law. See Woods v. State, 68 S.W.3d 667,
669 (Tex.Crim.App. 2002); Watson, 924 S.W.2d at 714; see also Ditto v. State, 988
S.W.2d 236, 239-40 (Tex.Crim.App. 1999).

 If the original notice of appeal fails to invoke jurisdiction of the appellate court, an
out-of-time amendment cannot serve to invoke jurisdiction. See Riewe, 13 S.W.3d at
413-14. Moreover, TRAP 25.2(d) does not permit an appellate court to grant a motion to
amend the notice of appeal if the amendments sought to be made to the notice of appeal
are jurisdictional amendments. Id. Once jurisdiction is lost, an appellate court lacks the
power to invoke any rule to thereafter obtain jurisdiction. Id. at 413; see TRAP 2. 
Dismissal of an issue or the entire matter is appropriate unless the form of the notice of
appeal is proper to perfect appeal as to the issue or matter. See White, 61 S.W.3d at 428.

 The deferred adjudication judgments complied with the plea bargain agreements
in placing appellant on deferred adjudication and imposing jail time as a condition of
probation. In such situation, the trial judge did not exceed the recommendation of the
State when, upon proceeding to an adjudication of guilt, the judge later assessed
punishment within the range allowed by law. See Woods, 68 S.W.3d at 669; Watson,
924 S.W.2d at 714. Thus, appellant's original general notices of appeal do not contain
allegations necessary to invoke our appellate jurisdiction as to issues two, three and four
because the requirements of TRAP 25.2(b)(3) apply to appeal of such issues. See
Vidaurri, 49 S.W.3d at 884-85; Watson, 924 S.W.2d at 714. And, the amended notices
were not timely so as to invoke appellate jurisdiction. See Riewe, 13 S.W.3d at 413-14. 
We have jurisdiction only to dismiss the appeals as to appellant's second, third and fourth
issues.

 Appellant's first issue, however, asserts that the judgments placing her on deferred
adjudication are void, and that the subsequent judgments adjudicating her guilty and
sentencing her are, therefore, void because they are based on the void deferred
adjudication judgments. Her assertion is that the interlineations in the judgments providing
that she serve 60 days in Collingsworth County Jail as condition of probation were
alterations of the deferred adjudication judgments without any showing in the record as to
when the interlineations were made. Under such circumstances, she urges, the alterations
caused the judgments to be void. Such issue may be considered on direct appeal. See
Nix v. State, 2001 WL 717453, *2 (Tex.Crim.App. 2001). 

VOID JUDGMENTS - ISSUE 1 

 In considering appellant's first issue asserting that the deferred adjudication
judgments were void, precedent requires that we indulge every presumption in favor of the
regularity of the documents in the trial court. See McCloud v. State, 527 S.W.2d 885, 887
(Tex.Crim.App. 1975); Nichols v. State, 511 S.W.2d 945, 947-48 (Tex.Crim.App. 1974). 
The formal judgment of the trial court carries with it a presumption of regularity and
truthfulness, and such is never to be lightly set aside. See Ex parte Morgan, 412 S.W.2d
657, 659 (Tex.Crim.App. 1967). For a judgment to be void, the record must leave no
question about the existence of the fundamental defect. See Nix, 2001 WL 717453 at *2. 
If the record is incomplete and the missing portion could conceivably show that the defect
does not in fact exist, then the judgment is not void, even though the available portions of
the record tend to support the existence of the defect. Id. 

 As appellant notes in her brief, the record does not show when the interlineations
in the deferred adjudication judgments were made or who made them. In such instance,
we will not presume that the interlineations were improperly made or made after the trial
judge signed the judgments. See id.; McCloud, 527 S.W.2d at 887. The record does not
unquestionably show any of the three deferred adjudication judgments to be void. (3) 
Accordingly, we overrule issue one. 



CONCLUSION


 Having dismissed appellant's second, third and fourth issues for want of jurisdiction,
and having overruled her first issue, we affirm the judgments of the trial court. 

 

 Phil Johnson

 Justice



Do not publish. 



1. Trial court Cause No. 2353 is appellate No. 07-98-0205-CR. Trial court Cause No.
2354 is appellate No. 07-98-0206-CR. Trial court Cause No. 2355 is appellate No. 07-98-0207-CR. 
2. A rule of appellate procedure will be referred to as "TRAP_" hereafter.
3. Because of our disposition of appellant's issue, we need not and do not consider
whether interlineation of conditions of probation in the judgments could have resulted in
void judgments. See Tex. Crim. Proc. Code Ann. art. 42.12 §§ 2(2), 3(a) (Vernon 2002);
Speth v. State, 6 S.W.3d 530, 532, 534 (Tex.Crim.App. 1999) (community supervision
involves suspension of a defendant's sentence; is in lieu of sentence and not part of the
sentence; terms are part of a contract between the trial court and the defendant; and
conditions not objected to at the time community supervision is granted are affirmatively
accepted as terms of the contract).


 


ul Shading Accent 6"/>
 
 
 
 
 
 
 
 
 
 









NO. 07-10-0098-CR 

NO. 07-10-0322-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 MAY 12, 2011



 

 



 

 

JAMES TERRY SHELNUTT, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 320TH DISTRICT COURT
OF POTTER COUNTY;

 

NOS. 59,233-D & 59,234-D; HONORABLE DON EMERSON, JUDGE



 

 



 

Before QUINN, C.J., and HANCOCK and
PIRTLE, JJ.

 

 

MEMORANDUM OPINION

            Appellant, James
Terry Shelnutt, was convicted following a jury trial of the murders of Robert
Phillips and Phyllis Fassauer in Cause Nos. 59,233-D and 59,234-D,
respectively, and sentenced to confinement for life and fined $10,000 in each
case.[1]   In two issues, Appellant asserts:  (1) the trial court erroneously joined the
two causes in a single trial and (2) his counsel was ineffective for not
presenting mitigation evidence during his punishment trial.  We modify the judgment in Cause No. 59,233-D
to reflect the correct amount of court costs and, as modified, is affirmed.  The judgment in Cause No. 59,234-D is
affirmed.    

Background

            On February
4, 2009, a Potter County Grand Jury returned separate indictments charging
Appellant with two murders allegedly committed more than twenty-seven years
prior to the indictments.  In Cause No. 59,233-D,
Appellant was charged with intentionally or knowingly causing the death of Robert
Phillips on November 16, 1981, by shooting him with a firearm.  In Cause No. 59,234-D, Appellant was charged
with intentionally or knowingly causing the death of Phyllis Fassauer on
November 16, 1981, by shooting her with a firearm.  The State's theory was that Appellant was
guilty under the law of parties because he solicited, aided, assisted, and
encouraged William Randall Bennett to kill Phillips, and that Bennett then also
killed Fassauer in the course of killing Phillips.

            On February 22, 2010, Appellant
filed a motion to quash and exception to the substance of the indictment
underlying Cause No. 59,234-D, the Fassauer murder.  In his motion, Appellant alleged that the
State could not prove that Appellant "intentionally or knowingly caus[ed]" the death of Fassauer under the law of transferred
intent.  On February 24, 2010, the trial
court held a pretrial hearing where the motion to quash was addressed.  During the hearing, Appellant's counsel
asserted that the indictment alleging Appellant murdered Fassauer was invalid because
it was not supported by the law existing at the time of the offense and there
was no legal or factual basis to support the State's allegations in that cause.[2]    

            The trial court ultimately denied
Appellant's motion to quash; however, during the course of that hearing, the
discussion turned to whether or not the two indictments should be tried
together.  In response to the trial court's
query as to whether they were going to be tried together, Appellant's counsel
responded: "No."  Appellant's
counsel contended that evidence of Fassauer's murder would be prejudicial and unduly
aggravate any punishment Appellant might receive for Phillips's murder because Fassauer
was merely an innocent bystander.  The
State asserted that the cases should be tried together because Fassauer's death
and Phillips's death were inextricably intertwined as a double homicide that
occurred during the same criminal episode and evidence of both murders would
necessarily be introduced during the prosecution of either indictment.  Thereafter, the trial court made a
determination that the two indictments would be tried together even though the
State had never filed written notice of consolidation or joinder.

            A four day jury trial commenced on March 1, 2010.  The day trial commenced, Appellant filed a
motion entitled "Motion For Continuance" wherein he requested the
trial court to reconsider its ruling on Appellant's motion to quash the
indictment and further requested a continuance of Cause No. 59,234-D, the
Fassauer murder, because the State had not filed a motion for joinder or served
notice as contemplated by section 3.02(b) of the Texas Penal Code.[3]  

            Prior
to denying Appellant's motion for continuance, the trial court asked Appellant's
counsel to explain the reason for the request and received the following
responses:

Your
Honor, as previously that we argued (sic) in a pretrial motion to quash the
indictment in 59,234, there are two different and separate indictments.  We believe that because there was no motion
for joinder filed, or a notice as required of 30 days, there should be no
joinder.  

*    *     *

Yes, sir, and I'm only requesting a continuance
in 59,234.  I'm sorry if I wasn't clear.

 

            At
the trial, the State presented testimonial evidence from a number of witnesses,
including Bennett, that Appellant solicited Bennett to kill Phillips in return
for an ounce of methamphetamine.  Appellant
gave Bennett a gun and drove him to a location near Phillips's house where he
let Bennett out of his car.  After
entering Phillips's house, Bennett spoke to Phillips and his girlfriend, Fassauer, in the living room.  He then went into the kitchen to get a drink
of water.  When he returned to the living
room, he first shot Phillips from behind in the back of the head and then shot
Fassauer because she witnessed Bennett shooting Phillips.  He then left the house.  Shortly thereafter, Appellant picked Bennett
up while he was walking down the street as planned.[4]  Based
on this evidence, the jury returned a verdict of guilty on both indictments.

            At the punishment trial, the State re-offered
the evidence presented in its case-in-chief and introduced a penitentiary
package containing information on Appellant's four previous felony
convictions.  Appellant's counsel
presented no mitigation evidence.  During
closing argument by Appellant's counsel, however, she argued that Appellant was
not present at the time the two persons were killed and Bennett was the shooter.  She indicated favorable character witnesses
were unavailable because Appellant had built his own prison using and selling
drugs in a culture where survival was always an issue.  The jury assessed punishment for each
indictment at confinement for life and a $10,000 fine.  The trial court's subsequent judgments sentenced
Appellant to two concurrent sentences of confinement for life and a $10,000
fine.[5]  This appeal followed.

Joinder / Severance

            Appellant
asserts the trial court erroneously
joined the two causes in a single trial because the State did not move to
consolidate or give thirty days written notice that it intended to consolidate
pursuant to section 3.02(b).  Appellant
further asserts that severance was mandated pursuant to section 3.04(a) because
Appellant objected to a joint trial. 
Appellant asserts he was harmed because the State's evidence underlying
Fassauer's murder was weak and the trial court did not give its legal analysis
when it denied Appellant's motion to quash. 


            The State contends Appellant waived
his right to a severance or acquiesced to a consolidated trial because
Appellant never requested that the causes be tried separately either orally or
in a written motion.  The State also
asserts that, if error was committed, it was harmless error because, if
separate trials were had, Phillips's and Fassauer's murders would be admissible
in either action because the murders occurred in the same criminal episode and,
as such, constituted same transaction contextual evidence. 

            Although we consider it doubtful
whether Appellant affirmatively asserted his right to severance prior to trial,[6] we need not consider this
issue because assuming severance was raised and erroneously denied by the trial
court, any error was harmless.  To judge
the likelihood that harm occurred, we must consider everything in the record,
including all the evidence admitted at trial, the closing arguments, and the
juror's comments during voir dire.  Llamas v. State, 12
S.W.3d 469, 471 (Tex.Crim.App. 2000). 
In order to properly conduct a harm analysis under Rule 44.2(b), an
appellate court need only determine whether or not the error affected a
substantial right of the defendant.  See
Tex. R. App. P. 44.2(b).  To make this
determination, appellate courts must decide whether the error had a substantial
or injurious affect on the jury verdict. 
White v. State,
190 S.W.3d 226, 231 (Tex.App.--Houston [1st Dist.] 2006, no pet.). 

            Here, the evidence of Appellant's
two offenses was admissible in a single trial as contextual evidence.[7]  See
Camacho v. State, 864 S.W.2d 524, 532 (Tex.Crim.App. 1993), cert. denied, 510 U.S. 1215, 114 S.Ct.
1339, 127 L.Ed.2d 687 (1994) (where two persons were kidnapped in Texas and
later murdered in Oklahoma, kidnapping and double murder were part of the same
transaction contextual evidence); Nelson
v. State, 864 S.W.2d 442, 498-99 (Tex.Crim.App. 1993), cert. denied, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994)
(where two women were simultaneously sexually assaulted and one woman murdered,
evidence of one victim's sexual assault and murder was admissible in other
victim's trial alleging sexual assault and attempted murder as same transaction
contextual evidence).  Thus, the jury
would have heard the same evidence regardless of whether the offenses were
tried separately in a different trial or together in one.  See
Dominguez v. State, 62 S.W.3d 203, 208 (Tex.App.--El Paso 2000, pet.
ref'd).  Accordingly, because the same
evidence would be admissible regardless of whether the offenses were tried
separately or jointly, we hold that any joinder / severance error did not
affect a substantial right.  See White, 190 S.W.3d at 231-32; Tovar v. State, 165 S.W.3d 785, 795
(Tex.App.--San Antonio 2005, no pet.); Dominguez,
62 S.W.3d at 208.  Appellant's first issue
is overruled.  

Ineffective Assistance of Counsel

            Appellant next asserts that his trial
counsel was ineffective because he failed to present any mitigating evidence
during the punishment trial.  The State
counters that the record is insufficient to conclude that Appellant's trial
counsel was ineffective.

            We
examine ineffective assistance of counsel claims by the standard enunciated in Strickland v. Washington, 466 U.S. 668,
687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by Texas in Hernandez v. State, 726 S.W.2d 53, 56-57
(Tex.Crim.App. 1986).  Appellant has the
burden to show by a preponderance of evidence (1) trial counsel's performance
was deficient in that it fell below the prevailing professional norms, and (2)
the deficiency prejudiced the defendant; that is, but for the deficiency, there
is a reasonable probability that the result of the proceeding would have been
different.  See Thompson v. State, 9 S.W.3d 808, 812
(Tex.Crim.App. 1999).  Counsel's conduct
is viewed with great deference; Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005), and any allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.  Thompson,
9 S.W.3d at 812. 


            In
the usual case in which an ineffective assistance claim is made, "the
record on direct appeal will not be sufficient to show that counsel's
representation was so deficient and so lacking in
tactical or strategic decision-making as to overcome the presumption that
counsel's conduct was reasonable and professional."  Bone v.
State, 77 S.W.3d 828, 833 (Tex.Crim.App. 2002).  This is generally the case because a silent
record provides no explanation for counsel's actions and therefore will not overcome
the strong presumption of reasonable assistance.  Freeman v. State, 125 S.W.3d 505, 506 (Tex.Crim.App. 2003).  The proper procedure for raising a claim of
ineffective assistance is almost always habeas corpus.  Aldrich v. State, 104 S.W.3d 890, 896 (Tex.Crim.App. 2003).

            This
case demonstrates the inadequacies inherent in evaluating such claims on direct
appeal.  See Patterson v. State, 46 S.W.3d 294, 306 (Tex.App.--Fort Worth
2001, pet. ref'd).  Like Patterson, Appellant's motion for new
trial did not claim ineffective assistance of counsel, the trial court did not
hold a hearing to determine whether Appellant's complaint involved actions that
may or may not have been grounded in sound trial strategy.  The only indication in the record why
Appellant's trial counsel did not present any mitigation evidence is her
closing argument in the punishment proceeding where she indicated such evidence
was unavailable.  On appeal, Appellant
does not point to any evidence that was available or describe how such evidence
would have created a reasonable probability that the result of the proceeding
would have been different.

            On
this record, to find Appellant's counsel ineffective, we would have to engage
in prohibited speculation.  See Stafford v. State, 101 S.W.3d 611,
613-14 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).  Absent evidence of counsel's strategy, we
cannot denounce counsel's actions as ineffective nor can we determine there is
a reasonable probability that the outcome would have been different.  For this reason, Appellant has not met either
prong of the Strickland test.  Accordingly, Appellant's second issue is
overruled.  

Attorney's Fees

            We also
note an issue not raised by Appellant regarding the assessment of attorney's
fees.[8]  The written judgment in Cause No. 59,233-D
reflects the assessment of court costs in accordance with the attached list of
costs, fees and fines.  The attached Bill
of Costs then reflects total costs of $28,757.91, which sum includes
court-appointed attorney's fees of $10,433.06. 
Also contained in the clerk's record is an order directing the
Institutional Division of the Texas Department of Criminal Justice to withhold
from Appellant's inmate account sums sufficient to pay the $28,757.91.  In order to assess attorney's fees as court
costs, a trial court must determine that the defendant has financial resources
that enable him to offset in part or in whole the costs of legal services
provided.  Tex. Code
Crim. Proc. Ann. art. 26.05(g) (West 2009).  Here, the clerk's record reflects the trial
court found Appellant indigent and unable to afford the cost of legal
representation both before trial in February of 2010, and again after trial in March
2010.  Unless a material change in his
financial resources occurs, once a criminal defendant has been found to be
indigent, he is presumed to remain indigent for the remainder of the
proceedings.  Tex. Code
Crim. Proc. Ann. art. 26.04(p) (West Supp. 2010).  Therefore, because there is evidence of
record demonstrating that immediately following rendition of judgment Appellant
was indigent and qualified for court-appointed counsel, we presume that his
financial status has not changed.   

            Furthermore, the record must reflect
some factual basis to support the determination that the defendant is capable
of paying attorney's fees.  Barrera v. State, 291
S.W.3d 515, 518 (Tex.App.--Amarillo 2009, no pet.); Perez v. State, 280 S.W.3d 886, 887 (Tex.App.--Amarillo 2009, no
pet.).

            We note that the record in this case
does not contain a pronouncement, determination, or finding that Appellant had
financial resources that enable him to pay all or any part of the fees paid his
court-appointed counsel, and we are unable to find any evidence to support such
a determination.  Therefore, we conclude
that the order to pay attorney's fees was improper.   See Mayer v. State, 309
S.W.3d 552, 555-56 (Tex.Crim.App. 2010). 
No trial objection is required to challenge the sufficiency of the
evidence regarding the defendant's ability to pay.  Id.  When the evidence does not support an
order to pay attorney's fees, the proper remedy is to delete the order.  Id. at
557; see also Anderson v. State, No.
03-09-00630-CR, 2010 Tex.App. LEXIS 5033, at *9
(Tex.App.--Austin July 1, 2010, no pet.) (mem. op., not designated for
publication) (also modifying judgment to delete
attorney's fees).  Accordingly, in Cause
No. 59,233-D, we modify both the judgment and the order to withdraw funds so as
to delete any obligation to pay court-appointed attorney's fees.  We further note that the judgment in Cause
No. 59,234-D does not contain the same error. 





Conclusion

            Having modified the trial court's judgment in Cause No. 59,233-D to
delete the order obligating Appellant to pay $10,433.06 in attorney's fees, that
judgment is affirmed as modified. 
 The trial court's judgment in
Cause No. 59,234-D is affirmed. 

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice  

 

Do not publish.

 

            

 











[1]See Tex. Penal Code Ann. § 19.02 (b)(1) (West 2003).





[2]Ultimately,
Appellant does not contest the applicability of the law of parties as a legal
basis for the conviction, nor does he contest the legal and factual sufficiency
of the evidence to support that conviction.





[3]Throughout
the remainder of this opinion, references to "section ____" or
"§ ___" are references to the Texas Penal Code.





[4]Bennett's
account of his agreement with Appellant, the murder and subsequent events taken
by Appellant to hide his participation in the murders was corroborated by four
other witnesses who overheard statements made by Appellant shortly after the
murders occurred.





[5]See Tex. Penal Code § 3.03(a) (West
2003) (absent an exception, when an accused is found guilty of more than one
offense arising out of the same criminal episode prosecuted in a single action,
the sentences shall run concurrently).  





[6]Appellant's
motions asked only that the trial court quash the indictment or grant a
continuance of Cause No. 59,234-D.  No
written or oral motion for a separate trial was ever made.  See
Coleman v. State, 788 S.W.2d 369, 373 (Tex.Crim.App. 1990) (where
appellant's motion did not apprise the trial court that it was a motion to
sever offenses for separate trials, appellant's right to severance was
waived).  Furthermore, Appellant does not
argue or explain why the right to a severance under § 3.04(a) should apply to
the facts of this case.  See § 3.04(c) (providing that § 3.04(a)
does not apply to a prosecution of multiple offenses arising out of the same
criminal episode). 





[7]Same transaction contextual evidence results
when an extraneous matter is so intertwined with the State's proof of the
charged crime that avoiding reference to it would make the State's case
incomplete or difficult to understand.  Rogers v. State, 853
S.W.2d 29, 33 (Tex.Crim.App. 1993). 
"It is well settled that where one offense or transaction is one
continuous episode, or another offense or transaction is part of the case on
trial or blended or closely interwoven therewith, proof of all facts is
proper."  Moreno v. State, 721 S.W.2d 295, 301
(Tex.Crim.App. 1986).  The purpose
of admitting extraneous evidence as same transaction contextual evidence is to
put the instant offense in context.  Camacho v. State, 864
S.W.2d 524, 532 (Tex.Crim.App. 1993).    






[8]Courts
of appeals may review unassigned error in criminal cases, particularly where
the record discloses error that should be addressed in the interest of
justice.  Hammock v. State, 211 S.W.3d 874, 878
(Tex.App.--Texarkana 2006, no pet.). 
Where, as here, the error appears on the face of the judgment and does
not involve the merits of the criminal trial, but instead solely addresses the
clerical correctness of the judgment, we find that the interest of justice
dictated that we address the issue.