NUMBER 13-02-353-CR

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

MIGUEL TREVINO A/K/A MIKE TREVINO,                                     Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

   On appeal from the 357th District Court of Cameron County,
Texas.

 

             OPINION ON MOTION FOR REHEARING

 

                Before Justices Hinojosa, Yañez,
and Castillo

                                      Opinion
by Justice Hinojosa

 

We issued a concurring opinion in this case
on June 9, 2005.  Appellant, Miguel
Trevino a/k/a Mike Trevino, subsequently filed a motion for rehearing.  We grant appellant=s motion for rehearing, withdraw our
concurring opinion of June 9, 2005, and substitute the following as the opinion
of this Court.








A jury found Trevino guilty of one count of
murder (count I) and one count of aggravated assault (count II) and assessed
his punishment at life imprisonment for the murder and ninety-nine years= imprisonment for the aggravated
assault.  In four issues, Trevino
contends that the trial court erred in denying his motion to sever, in denying
his motion to quash the indictment, and in admitting evidence of gang affiliation,
and that the evidence is insufficient to support the convictions.  We affirm.

                                                             A.  Background

On June 8, 2001, Everardo Serrato was
traveling southbound on Sam Houston Street in San Benito in a Grand Am, with
Michael Meza as his passenger.  While
stopped at a traffic light, Serrato noticed Trevino approaching in a Jeep
Cherokee from the opposite direction. 
Because Serrato had known Trevino for many years, Serrato thought
Trevino wanted to talk.  As Serrato
started to roll down his window, Trevino opened fire on the Grand Am with a semi-automatic
weapon.  Serrato immediately reclined his
seat in an effort to protect himself. 
Attempting to escape, Serrato maneuvered the Grand Am out of traffic and
fled north on the Expressway frontage road with Trevino in pursuit.  While in pursuit, Trevino continued shooting
at the Grand Am; half of his body was hanging outside of the Jeep, while a
female steered the vehicle.  The chase
and shooting continued for about fifteen to twenty minutes.  When the shooting stopped, Serrato turned
onto the first street he reached and pulled into a convenience store parking
lot.  Serrato ran inside the store and
told the clerk to lock the door.  As a
result of the shooting, Serrato sustained five bullet wounds.  Meza sustained four entry wounds and died as
a result of his injuries.

                                                               B.  Severance








In his first issue, Trevino contends the
trial court erred in denying his motion to sever.  A defendant may be prosecuted in a single
criminal action for all offenses arising out of the same criminal episode. Tex. Pen. Code Ann. ' 3.02 (Vernon 2003).  However, a defendant has a right to a
severance of the offenses.  Tex. Pen. Code Ann. ' 3.04(a) (Vernon Supp. 2005).  A motion to sever must be raised before
trial.  See Thornton v. State, 986
S.W.2d 615, 617 (Tex. Crim. App. 1999). 
When a defendant timely requests severance under section 3.04(a), his or
her right to a severance is absolute and severance is mandatory.  See Coleman v. State, 788 S.W.2d 369,
371 (Tex. Crim. App. 1990). 

Prior to trial, Trevino filed a motion to
sever under section 3.04(a), but the trial court denied the motion.  Because the right to a severance is absolute,
we conclude the trial court erred in denying the motion.  See Coleman, 788 S.W.2d at 371.  However, because severance error is subject
to a harm analysis, we must determine whether the trial court=s denial of Trevino=s motion to sever affected a substantial
right.  See Llamas v. State, 12
S.W.3d 469, 470-71 (Tex. Crim. App. 2000). 
In determining harm, we consider the entire record.  Tovar v. State, 165 S.W.3d 785, 795
(Tex. App.BSan Antonio 2005, no pet.) (citing Llamas,
12 S.W.3d at 471).

The rule allowing severance rests upon two
legitimate concerns:  (1) that the jury
may convict a Abad man@ who deserves to be punished B not because he is guilty of the crime
charged but because of his prior or subsequent misdeeds; and (2) that the jury
will infer that because the accused committed other crimes, he probably
committed the crime charged.  Llamas,
12 S.W.3d at 471-72; Tovar, 165 S.W.3d at 795.








The State argues that any error is harmless
because the evidence of each of the crimes would have been admissible in a
separate trial of the other offense as same transaction contextual
evidence.  See Dominguez v. State,
62 S.W.3d 203, 208 (Tex. App.BEl Paso 2000, pet. ref=d) (holding severance error was harmless
because evidence of each crime would be admissible in a separate trial of the
other offense as same transaction contextual evidence).  Same transaction contextual evidence results
when an extraneous matter is so intertwined with the State=s proof of the charged crime that avoiding
reference to it would make the State=s case incomplete or difficult to
understand.  Rogers v. State, 853
S.W.2d 29, 33 (Tex. Crim. App. 1993).  We
agree with the State that under the facts of this case the jury would have
heard the same evidence regardless of whether the offenses were tried together
or separately.  Because we conclude that
any severance error did not affect a substantial right, we overrule Trevino=s first issue.

                                             C.  Motion
to Quash Indictment

In his second issue, Trevino contends the
trial court erred in denying his motion to quash the first paragraph of the
murder count in the indictment. 
Specifically, Trevino asserts that the indictment fails to track the
language of section 19.02(b)(2) of the Texas Penal Code because it does not
include the word Aand.@ 
Section 19.02(b)(2) provides:  AA person commits an offense if he . . .
intends to cause serious bodily injury and commits an act clearly
dangerous to human life that causes the death of an individual. . . .@  Tex. Pen. Code Ann. ' 19.02(b)(2) (Vernon 2003) (emphasis
added).  Trevino argues that because the
word Aand@ was not included in the indictment, the indictment
fails to allege all the necessary elements of the offense of murder.








The sufficiency of an indictment is a
question of law and is reviewed de novo. 
State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004) (citing
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  The indictment must be specific enough to
inform the defendant of the nature of the accusations against him so that he
may prepare a defense. Id. 
However, this due process requirement may be satisfied by means other
than the language in the charging instrument. 
Kellar v. State, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003).  When a motion to quash is overruled, a
defendant suffers no harm unless he did not, in fact, receive notice of the
State=s theory against which he would have to
defend. Id.  Except in rare cases,
a charging instrument that tracks the language of a criminal statute possesses
sufficient specificity to provide a defendant with notice of a charged offense,
and the State need not allege facts which are merely evidentiary in
nature.  See State v. Edmond,
933 S.W.2d 120, 128 (Tex. Crim. App. 1996).

The indictment alleged that:

MIGUEL TREVINO A/K/A MIKE TREVINO
[Defendant], on or about the 8TH day of JUNE, 2001 and anterior to the
presentment of this indictment, in the County of Cameron and State of Texas,
did then and there, with intent to cause serious bodily injury to an
individual, namely, MICHAEL MEZA, commit an act clearly dangerous to human
life, to-wit:  by shooting MICHAEL MEZA
with a firearm, that caused the death of said MICHAEL MEZA.

 

The indictment clearly tracks the language
of section 19.02(b)(2) of the penal code and alleges all the requisite
elements:  that Trevino Adid then and there@ (1) with intent to cause serious bodily
injury, (2) to Michael Meza, (3) commit an act clearly dangerous to human life,
(4) by shooting Michael Meza with a firearm, (5) that caused the death of Michael
Meza.  See Tex. Pen. Code Ann. ' 19.02(b)(2) (Vernon 2003).  We conclude that Trevino had sufficient
notice the State was charging him with the offense of murder under section
19.02(b)(2).  See id.  We
hold that the absence of the word Aand@ is not fatal. 
Trevino=s second issue is overruled.

                                           D.  Evidence
of Gang Affiliation








In his third issue, Trevino contends the trial court
erred by admitting evidence of gang affiliation during the guilt-innocence
phase of the trial.  In response, the
State argues that the evidence was relevant and admissible for the following
two reasons:  (1) it demonstrated the
primary motive for the murder and aggravated assault, and (2) it constituted
the res gestae of the murder itself.

In determining whether a trial court erred in
admitting evidence, the standard of review is abuse of discretion.  McDonald v. State, 179 S.W.3d 571, 576
(Tex. Crim. App.  2005) (citing Mozon
v. State, 991 S.W.2d 841, 846‑47 (Tex. Crim. App. 1999).  A trial court abuses its discretion when its
decision is so clearly wrong as to lie outside that zone within which reasonable
persons might disagree.  Montgomery v.
State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh=g).

Texas Rule of Evidence 404(b) provides that evidence
of other crimes, wrongs, or acts is not admissible to prove a person=s character and/or to show that the person acted in
conformity with that character.  See Tex. R. Evid. 404(b).  However, such evidence may be admitted if it
is relevant to motive, identity, intent, opportunity, preparation, plan or
absence of mistake.  Id.  As the Texas Court of Criminal Appeals has
explained, AIt has long been the rule in this State that the
jury is entitled to know all relevant surrounding facts and circumstances of
the charged offense; an offense is not tried in a vacuum.@  Moreno v.
State, 721 S.W.2d 295, 301 (Tex. Crim. App. 1986) (citing Archer v.
State, 607 S.W.2d 539, 542 (Tex. Crim. App. 1980)).








The State=s theory was that Trevino, a member of the ATexas Syndicate,@
intentionally opened fire on Serrato=s vehicle because Serrato was a member of a rival
sect of the same gang.  Gang affiliation
evidence is relevant evidence of motive to show intent to kill and is
permissible under rule 404(b).  See
Medina v. State, 7 S.W.3d 633, 644 (Tex. Crim. App. 1999) (stating that
evidence of gang affiliation "was most relevant as to appellant=s motive and intent on the night of the
offense"); Cunningham v. State, 982 S.W.2d 513, 523 (Tex. App.BSan Antonio 1998, pet. ref=d) (holding trial counsel was not ineffective for
failing to object to evidence of defendant=s gang affiliation because such evidence was
admissible to show motive); Williams v. State, 974 S.W.2d 324, 331 (Tex.
App.B San Antonio 1998, pet. ref=d) (holding evidence of gang affiliation admissible
under rule 404(b) to show motive). 
Because Trevino=s affiliation with a rival sect of the gang was
relevant to show the motive for the shooting, rather than mere conformity with
character, we hold the trial court did not abuse its discretion by allowing
it.  Trevino=s third issue is overruled.

We note that evidence admissible under rule 404(b)
may be excluded under Texas Rule of Evidence 403 if the danger of unfair
prejudice substantially outweighs its probative value.  See Tex.
R. Evid. 403.  However, Trevino
failed to object under rule 403, and thus failed to preserve any such
error.  See Tex. R. App. P. 33.1(a); Montgomery,
819 S.W.2d at 388.

                                            E.  Sufficiency
of the Evidence

In his fourth issue, Trevino contends the evidence
is legally and factually insufficient to support his convictions for the murder
of Meza and the aggravated assault of Serrato. 
Specifically, Trevino contends the evidence is insufficient to prove (1)
the requisite intent for murder, and (2) the element of identity for both
murder and aggravated assault.








In a legal sufficiency review, we must examine the
evidence presented in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Escamilla
v. State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Jackson v.
Virginia, 443 U.S. 307, 319 (1979)). 
In making this determination, the reviewing court considers all the
evidence admitted that will sustain the conviction, including improperly
admitted evidence.  Conner v. State,
67 S.W.3d 192, 197 (Tex. Crim. App. 2001). 
Questions concerning the credibility of the witnesses and the weight to
be given their testimony are to be resolved by the trier of fact.  Mosley v. State, 983 S.W.2d 249, 254
(Tex. Crim. App. 1998).  Evidence is not
rendered insufficient when conflicting evidence is introduced.  Matchett v. State, 941 S.W.2d 922, 936
(Tex. Crim. App. 1996).  The reviewing
court must assume that the fact finder resolved conflicts, including
conflicting inferences, in favor of the verdict, and must defer to that
resolution.  Id.  The fact finder may use common sense and
apply common knowledge, observation, and experience gained in ordinary affairs
when giving effect to the inferences that may be reasonably drawn from the
evidence.  Booker v. State, 929
S.W.2d 57, 60 (Tex. App.BBeaumont 1996, pet. ref=d).








In a factual sufficiency review, we review all the
evidence in a neutral light and determine whether evidence supporting the
verdict is too weak to support the finding of guilt beyond a reasonable doubt
or if evidence contrary to the verdict is strong enough that the beyond‑a‑reasonable‑doubt
standard could not have been met.  Threadgill
v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004).  Our neutral review of all the evidence, both
for and against the challenged elements, looks to determine whether proof of
guilt is so obviously weak as to undermine confidence in the jury=s determination, or whether proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof.  See Zuniga v. State, 144 S.W.3d
477, 484‑85 (Tex. Crim. App. 2004). 
A proper factual sufficiency review must consider the most important
evidence that the appellant claims undermines the jury=s verdict.  Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  However, we approach a factual sufficiency
review with appropriate deference to avoid substituting our judgment for that
of the fact finder.  Johnson v. State,
23 S.W.3d 1, 6‑7 (Tex. Crim. App. 2000). 
Every fact need not point directly and independently to the accused=s guilt.  Vanderbilt
v. State, 629 S.W.2d 709, 716 (Tex. Crim. App. 1981).  A conclusion of guilt can rest on the
combined and cumulative force of all the incriminating circumstances.  Id.

In conducting our review, we measure the sufficiency
of the evidence by the elements of the offense as defined by a hypothetically
correct jury charge for the case.  See
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); Adi v. State,
94 S.W.3d 124, 181 (Tex. App.BCorpus Christi 2002, pet. ref=d).  This
hypothetically correct jury charge would set out the law, be authorized by the
indictment, not necessarily increase the State=s
burden of proof or necessarily restrict the State=s
theories of liability, and adequately describe the particular offense for which
the defendant was tried.  Malik,
953 S.W.2d at 240.

A person commits murder if he intentionally or
knowingly causes the death of an individual or intends to cause seriously
bodily injury and commits an act clearly dangerous to human life that causes
the death of an individual.  See Tex. Pen. Code Ann. ' 19.02(b)(1), (2) (Vernon 2003).








A person commits aggravated assault if he
intentionally, knowingly, or recklessly causes bodily injury to another and
either (1) uses or exhibits a deadly weapon during commission of the assault,
or (2) causes serious bodily injury to another. 
See Tex. Pen. Code Ann.
'' 22.01, 22.02 (Vernon Supp. 2005).  ASerious bodily injury@ means
bodily injury that creates a substantial risk of death or that causes death,
serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ.  Tex. Pen. Code Ann. ' 1.07(a)(46) (Vernon Supp. 2005).  ADeadly weapon@ is defined as anything that in the manner of its
use or intended use is capable of causing death or serious bodily injury.  Tex.
Pen. Code Ann. ' 1.07(a)(17)(B) (Vernon Supp. 2005).

A person acts intentionally, or with intent, with
respect to the nature of his conduct or to a result of his conduct when it is
his conscious objective or desire to engage in the conduct or cause the
result.  Tex. Pen. Code Ann. ' 6.03 (a), (b) (Vernon 2003).  Intent is almost always proven by
circumstantial evidence.  Manrique v.
State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (J. Meyers concurring)
(citing Robles v. State, 664 S.W.2d 91, 95 (Tex. Crim. App. 1984)).  A jury may infer intent from any facts which
tend to prove its existence, including the acts, words, and conduct of the
accused, the method of committing the crime, and from the nature of wounds
inflicted on the victims.  Id.
(citing Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App.
1991)).  If a deadly weapon is used in a
deadly manner, the inference is almost conclusive that the defendant intended
to kill.  Adanandus v. State, 866
S.W.2d 210, 215 (Tex. Crim. App. 1993). 
In fact, when a deadly weapon is fired at close range and death results,
the law presumes an intent to kill.  Womble
v. State, 618 S.W.2d 59, 64 (Tex. Crim. App. 1981).








Under the theory of transferred intent, a person can
be held criminally responsible  for
causing a result if the only difference between what actually occurred and what
he desired, contemplated, or risked is that a different person was injured,
harmed, or otherwise affected.  Tex. Pen. Code Ann. ' 6.04(b)(2) (Vernon 2003).

Trevino asserts that Meza=s death was accidental and not intentional.  He argues that because the definition of
transferred intent was not included in the jury charge, the jury could not find
him guilty under such theory.

Transferred intent is raised when there is evidence
that a defendant, with the required culpable mental state, intends to injure or
harm a specific person but injures or harms a different person or both.  Manrique, 994 S.W.2d at 647 (J.
McCormick concurring).  Furthermore,
under Malik, the hypothetically correct jury charge would include the
doctrine of transferred intent.  See
Malik, 953 S.W.2d at 240.  Indeed,
the Malik court itself anticipated the review of theories that were
raised by the evidence, but not charged in the jury charge, or even the
indictment, where such theories are permitted by law and authorized by the
indictment.  Swartz v. State, 71
S.W.3d 781, 786 (Tex. App.BCorpus Christi 2001, pet. ref=d); see Malik, 953 S.W.2d at 239 (A[W]e recognize that measuring sufficiency by the
indictment is an inadequate substitute because some important issues relating
to sufficiency B e.g. the law of parties and the law of transferred
intent B are not contained in the indictment.@).








The evidence shows that Trevino approached Serrato=s vehicle while it was stopped at an intersection
and began shooting at the driver=s side of Serrato=s
vehicle with a semi-automatic weapon. 
Four shots shattered the driver=s side window and one shot pierced the driver=s side door. 
Serrato sustained bullet wounds to his face and arms, which required
surgery.  Meza, in the passenger seat,
sustained four bullet wounds resulting in his death.  Trevino continued to shoot at Serrato=s vehicle while in pursuit.

Serrato positively identified Trevino as the
shooter.  He testified that he had known
Trevino for over fifteen years, and they were once in the same prison
unit.  Serrato testified that he and
Trevino are both members of the Texas Syndicate gang, but Serrato is a veteran
member, whereas Trevino is a member of the Anew
wave,@ and that the Anew wavers@ have been killing older members.

Carol Cruz, an eyewitness to the shooting, was
unable to identify Trevino from a photo lineup a few days after the
shooting.  However, at trial, she
identified Trevino as the shooter.








Viewing the evidence in the light most favorable to
the verdict, we conclude that a rational trier of fact could have found beyond
a reasonable doubt that Trevino committed the offenses of murder[1]
and aggravated assault.  See Escamilla,
143 S.W.3d at 817.  Furthermore, viewing
the evidence in a neutral light, we conclude that the evidence supporting the
verdict is not too weak to support the jury=s finding
of guilt beyond a reasonable doubt, or that the contrary evidence is strong
enough that the beyond‑a‑reasonable‑doubt standard could not
have been met.  See Threadgill,
146 S.W.3d at 664.  From the evidence,
the jury could reasonably infer that by opening fire with a semi-automatic
weapon on an occupied vehicle, Trevino specifically intended to kill either or
both of the occupants of the vehicle, see Adanandus, 866 S.W.2d at 215,
or under the theory of transferred intent, the jury could reasonably infer that
Trevino intended to shoot and kill Serrato, but instead killed Meza, see Tex. Pen. Code Ann. ' 6.04(b)(2). 
Furthermore, regarding identity, the jury, being the sole judge of the
credibility of the witnesses, was free to accept or reject the evidence before
it, and in doing so, concluded that Trevino was the shooter.  See Earls v. State, 707 S.W.2d 82, 85
(Tex. Crim. App. 1986).  Accordingly, we
hold the evidence is legally and factually sufficient to support the jury=s verdict. 
Trevino=s fourth issue is overruled.

The judgment of the trial court is affirmed.

 

FEDERICO G. HINOJOSA

Justice

 

Concurring
Opinion by Justice Castillo. 

 

Publish.  See Tex.
R. App. P. 47.2(b).

 

Opinion
delivered and filed this

the
8th day of June, 2006.











[1] The indictment charged appellant
with murder under subsections 19.02(b)(1) and 19.02(b)(2) of the penal
code.  The jury returned a verdict
finding appellant Aguilty of murder, as charged in the
indictment.@ 
When a general verdict is returned and the evidence is sufficient to
support a finding under any of the paragraphs submitted, the verdict will be
applied to the paragraph finding support in the facts.  Manrique v. State, 994 S.W.2d 640, 642
(Tex. Crim. App. 1999).